The next case this morning is 523-0321, People v. Schorman. Arguing for the appellant is Benjamin Wimmer. Arguing for the appellee is Jessica Theoratos. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Mr. Wimmer, you represent the defendant. Would you like to proceed, please? Yes, Your Honor. May it please the court. Ben Wimmer of the State Appellate Defender's Office on behalf of the defendant, Derek Schorman. This court should reverse Mr. Schorman's conviction for aggravated criminal sexual abuse and remand for a new trial for two reasons. First, the trial court erred in excluding Sarah Flowers' testimony that the complaining witness, then 10-year-old M.W., had a reputation for dishonesty under Illinois Rule of Evidence 608, where defense counsel's offer of proof established a foundation for her testimony sufficient to satisfy Rule of Evidence 104A and B. Second, trial counsel was ineffective in introducing, for the first time in the defense case, evidence sufficient to prove that Mr. Schorman was over 17 years of age, a necessary element of aggravated criminal sexual abuse as charged in the indictment. With respect to the first issue, the State's case against Mr. Schorman depended critically on the credibility of the complaining witness. The complaining witness testified that Mr. Schorman repeatedly touched her sexually in places where other people were present, but which they would not be able to see and might not notice. There was no physical evidence specifically confirming or disconfirming whether any sexual touching occurred. In response to this, defense counsel sought to impeach the complaining witness's credibility with testimony from Sarah Flowers that the complaining witness had a reputation for untruthfulness. This is classically an acceptable type of evidence. Under Rule of Evidence 608, a party can attack the credibility of a witness with evidence of that witness's character for untruthfulness. Under Illinois Rule of Evidence 405A, that proof may be made by testimony as to reputation or opinion evidence. In this case, defense counsel had and sought to use opinion testimony from Sarah Flowers. In the trial court, the party's dispute concerned whether or not defense counsel's offer of proof sufficiently established foundation for Sarah Flowers to have a reputation for untruthfulness. And it was so sufficient. Under Illinois Rule of Evidence 602, a witness needs personal knowledge of a fact in order to be able to testify to it, but that personal knowledge can be proved through the witness's own testimony. Under Rule of Evidence 104B, where admissibility of evidence is conditioned on a determination of a witness's personal knowledge, the court shall admit that evidence upon, quote, introduction of evidence sufficient to support a finding of the fulfillment of the condition, unquote. Put those two rules together, and you get the holding cited in Mr. Shorman's initial brief of the Illinois Supreme Court in People v. Ulrich from 1963. A witness testifies that they have learned another witness's reputation through contact with that witness's associates. That is prima facie sufficient to establish foundation for that witness to give reputation testimony. And the offer of proof here, you know, specifically, explicitly included that. On page 442 of the report of proceedings, Flowers was asked, are you familiar with the complaining witness's reputation in the community for truthfulness? She answers yes. Now, as noted in other cases cited in Mr. Wimmer, one of the issues on page 442 is the question you said, are you familiar with reputation? And the answer is yes. But when they went on to ask, how are you familiar with that? The witness said, being as that we are in the same family within the community. And so, this particular witness was using her knowledge of the child in the family to base it on reputation. So, how do we jump from family to neighborhood, workplace, or community, which I believe is the standard for reputation? Your Honor, the standard for what constitutes reputation is community. But all that community means is a group of people in which reputation can be established. If you actually look at Rule 608 and Rule 405, the word community doesn't appear. It shows up in the case law because it's the sort of thing that a reputation requires. It's a group of people in which you can develop a reputation. Knowledge about you gets passed around, becomes a sort of vague reputation. So, in this case, the fact that part of her knowledge of the complaining witness's reputation comes through people who have a relation to the complaining witness, whether a close relation or a more distant relation, she says the family is quite large, does not prevent her from actually having a reputation and the testimony not being based on her own particular interactions with the complaining witness, which would make this an opinion testimony as opposed to reputation. As a matter of fact, unlike in the cases cited in the briefs, Emmett, Brink, Vendt, the State during cross-examination during Board Year of Mrs. Flowers, came with very aggressive leading questions trying to get Ms. Flowers to testify that actually what she was describing as reputation testimony was really based on her own personal interactions with the complaining witness and were essentially her own reputation testimony. And unlike in Emmett, Brink, and Vendt, they did not produce an answer in which she said that she only had reputation knowledge about the complaining witness and had not heard a reputation from other people who knew her. The hardest push on page 449 of the record, isn't it also true that you're really basing your opinion about the complaining witness's truthfulness on your own experiences with her? Response, not necessarily. It's not that I don't know her, but I mean, I am not quite understanding your question. A page later on 450 in the reported proceedings, isn't it, is that really the basis of your opinion? The answer, I don't feel that's accurate because I still hear people say, you know, when she's away from me, how they see her act. So I have heard other people's opinion of her as well. This is enough to allow a reasonable fact finder to conclude that the Ms. Flowers was telling the truth, that the complaining witness did actually have a reputation for untruthfulness that she had heard within a broader, you know, community of associates and people who interacted with the complaining witness. Under Rule of Evidence 104B, if the jury could conclude that, that's enough for the jury to consider it. Given that offer of proof, excluding this evidence was error. And this court can't determine on, you know, during this appeal that that error was harmless. As noted before, there is no physical evidence to confirm or disconfirm the complaining witness's accounts. The state itself argued during its closing arguments to the jury, you have to determine whether she is credible. That's on page 532. So that is one independent reason why this court should reverse the conviction and order a new trial. Second, this court should reverse and order a new trial because Mr. Shorman received ineffective assistance of counsel when defense counsel realized too late that the state had failed to prove a necessary element of the offense, as charged in the indictment. For the first time in the motion for new trial, defense counsel realized that the state never made any proof as to, you know, Mr. Shorman's age, which it had to do. But it was too late. By that point, defense counsel had already, almost in passing, while doing introductory testimony with one of the witnesses, established a sufficient circumstantial case to establish that Mr. Shorman was over the age of 17. Don't you think that the jury could see that circumstantially? Not from the evidence that the state had proffered in its own case. That doesn't include his state. For that reason, I would urge you to reverse. Thank you. All right. Justice Moore, any questions? No questions. Justice Shomer? No questions. All right. Thank you, Mr. Wimmer. You'll have some time for rebuttal after the state is finished with its argument. I always butcher your name. I apologize. It's Theodore Adams? That was perfect. Thank you. Would you like to submit your argument for the state? Yes, please. May it please the court. Good morning. My name is Jessica Theodorados, and I represent the people. The trial court did not abuse its discretion in granting the people's motion in limine, seeking to bar testimony from Ms. Flowers regarding the victim, M.W.'s, reputation for untruthfulness. A proper foundation must be laid before a party may introduce evidence of character or reputation of a witness. In all cases, the proper procedure is to introduce evidence of truthfulness to ask the witness whether he or she knows the general reputation of the witness's truthfulness in the neighborhood in which the witness lives or at the witness's workplace. During the hearing on the motion in limine, defendant argued that Ms. Flowers was M.W.'s aunt and had known her to embellish stories to be the center of attention. The people argued that Ms. Flowers could not describe M.W.'s reputation and rather stated her own personal experiences. The people argued that Ms. Flowers did not live in the same community as the 10-year-old victim. Ms. Flowers then testified that she was in M.W.'s family and would see her several times a year at family gatherings. Ms. Flowers stated M.W. was a frequent topic of conversation and the family would discuss M.W. lying to her parents. At first, when testifying, Ms. Flowers could not in the community talking about M.W. and mentioned her niece or maybe M.W.'s brother would have talked about her. When asked if anyone outside the family talked about M.W., Ms. Flowers first responded that she was related to a lot of the members in the community and had 2,000 to 3,000 family members. Ms. Flowers lived in Mason and the victim lived in Effingham. Later, when pushed by defense counsel, Ms. Flowers claimed that she had a conversation about M.W. with a woman named Angie Snipes in 2019. Ms. Flowers could not recall exactly when or what the context was beyond that Ms. Snipes knew M.W. was her niece. Ms. Flowers even testified that she was basing her experience of M.W.'s reputation to a point on her own personal experiences. Other than the Ms. Snipes' correspondence, every other thing Ms. Flowers could recall was from her own personal experiences with the family and family discussions. The trial court stated... Let me interrupt you just for a minute here because the transcript in this case goes back and forth, back and forth, back and forth. It seems to me that the state and the trial judge in this case really didn't know how to prove reputation testimony. The state kept objecting during the offer of proof, which I'm not familiar with objecting during an offer of proof, but the judge kept sustaining objections when the state would object. Because in the record on page 442, which was referenced by defense counsel, the question was asked, are you familiar with Madeline's reputation in the community for truthfulness? Answer, yes. That's a good foundational question. Then, how are you familiar with that? And was that the case prior to this happening? And was that conversation about her reputation, what was the conversation about her reputation for truthfulness? And the state objects and it's sustained. And we get that repeatedly where the state objects and the court is sustaining the so it seems to me the magical question was asked and then we don't have an answer because we have a judge who kept sustaining an objection. So, what is the state's response to that long-winded question? Well, it seemed that defense counsel was asking about specific instances, which is improper in my opinion. Well, if the state pushes on by objection, I think the state says the defense hasn't shown who it was and so she responds with the name. That name was offered in response to an objection by the state. I agree with you that's not the way to do it. It seems to me the way to do it is to ask the general question. What are we to do as an appellate court where we have the state objecting and the trial court sustaining the objection? Should we take the general response? Should we look at the objection and what we don't know from that? How are we to deal with that, this record? That's a difficult question. I would say taking the entire testimony as a whole really reflects what Ms. Flowers knew and what she didn't know and what she was basing her opinion off of. And to me, honestly, it's unclear whether a 10-year-old could have even developed a reputation at such a young age. But what is very clear is that Ms. Flowers did not testify about M.W.'s neighborhood or M.W.'s workplace. And the only things that she had to say were her personal experiences with M.W.'s family. I'm going to interject for a moment though. But wasn't she asked directly if she knew her reputation in the community? Yes. And didn't she answer yes to that? Yes. And isn't that the only, I mean, isn't that the key foundational question? Well, if she was discussing her community or workplace, it didn't really get into what she was talking about, about her reputation. I mean, obviously, workplace for a 10-year-old is a little challenging, obviously. But you agree though that the question that she answered yes to was a foundational question, correct? Yes. Correct. Well, and to follow up with Justice Scholder, the follow-up question to that was, how are you familiar? Would that have also been the question you would typically ask? If you're familiar with it, then the next question would be, how are you familiar? Isn't that correct? Yes, Your Honor. Well, she said she was a family member. Right. That's the key. Did she say how she was related? You know, in a family where you're describing a family of 2,000 or 3,000 people, that's not what normally would be considered a family. So how can you be in a family of 3,000 people? Well, what is your response to his question? She was his aunt, the child's aunt, wasn't she? Right. And I don't believe that just being someone's aunt puts you in the same community as an individual. And it was never established that Ms. Flowers was in the same community or had any knowledge of MW's community. Well, this is where we get into a problem from my perspective that I want the state to respond to. On page 441 of the record, when they first asked the question, are you familiar with Madeline's reputation amongst family members, friends, and other members of the community for truthfulness, the state objects. And the court says compound and relevance and sustains the objection. Isn't that the question that would have revealed for us her reputation for truth amongst the family members, the friends, and other members of the community? Yes. But then later when she is answering the questions about her experiences, it's all her personal experiences with the victim. Well, it's her personal experiences within the family orbit, correct? Yes. Yes. And then the state asks her, who else have you heard it from in the community? And she acknowledges some friends and then she's pushed to, do you know the names of those friends? And she mentions somebody, but that's all by the state, isn't it? You have to answer yes or no for the record for me. Yes, Your Honor. Thank you. I'm sorry. Okay. That's my dilemma in this case. What does the state say to that? I understand why that would be an issue, but ultimately the foundation was not laid. Defense counsel could not lay the foundation because this 10-year-old did not have a reputation in the community. But ultimately, if this court finds that it was an abuse of discretion to deny or to grant the people's motion in limine, Ms. Flower's testimony would not have impacted the outcome of trial because it would have been harmless. Here, there was only one version of events to what occurred between defendant and the victim. It's not like there's a credibility contest here because defendant put forth no other alternate version of events. Ms. Flower's vague opinion that MW would create stories to be the center of attention would not negate MW's consistently providing the same version of events of the CAC interview. I notice I'm out of time. That's okay if you want to wind up here. Are you saying there's no prejudice here that this is harmless error? Yes, Your Honor, that the other evidence was sufficient to convict defendant. Okay. Justice Moore, any questions? No questions. Justice Scholar? No questions. Okay. Thank you for your argument. Mr. Wimmer, rebuttal? Are you replying? Yes, Your Honor, just briefly. It is a feature of the voir dire in this case that once Ms. Flower's testified that she was familiar with the complaining witness's reputation in the community, the state asked a series of cross-examination questions, and also defense counsel did on direct trying to produce particular statements from other people. That can't come in. If it's a particular statement from other people, it's hearsay. At the same time, for that very reason, it's not a requirement of foundation for giving reputation testimony that a party offer particular hearsay statements that they've heard from other people in the community, or that they identify the particular people in the community from whom they've heard those hearsay statements. If the state's cross-examination or further examination of Ms. Flower's testimony justified that she had not heard the complaining witness's reputation from the community, that would be enough to destroy foundation. But that didn't happen here. The state to a degree is also simply attacking her credibility. That's something that needs to be done at trial in front of the jury. If a reasonable fact finder could credit her, and they could here, it's not the trial judge's job to exclude the evidence in advance. What would be the relevance of this testimony? The relevance of the testimony goes to whether or not the jury can credit the complaining witness beyond a reasonable doubt, where essentially her testimony is the only thing tending to establish that any sexual touching occurred. But you have a 10-year-old child who, under this offer of proof, we don't really know what the witness would have said, except that she makes up stories. One of the objections sustained by the court was to relevance. So what about the state's argument of harmless error? I don't think it can't be determined that it's harmless on the current record. To a degree, I'm just going to be repeating what I've already said, in that her testimony is the one thing tending to establish guilt. And evidence that she has a reputation, that she has a tendency to make up stories to be the center of attention, would make it less likely that a jury would that her testimony is sufficiently reliable to prove guilt beyond a reasonable doubt. It would actually dovetail slightly with certain aspects of her recorded statement in the Children's Advocacy Center, during which she was bringing up things about Mr. Shorman that weren't directly related to any allegations of sexual touching, but nonetheless seemed kind of, she seemed sort of interested in the fact that he had a dog that died, the fact that he let one of his children cry himself to sleep one time. Together, it can't be determined, at the very least, that a reasonable jury wouldn't have had its assessment of her credibility sufficiently affected by this testimony to change whether or not the court has any further questions. I just want clarification for the record. When you use the term voir dire in the beginning of your reply, you meant the questioning during the offer of proof? Yes. Okay. Justice Moore, any questions? No other questions. Justice Sholer? No. Okay, thank you both for your arguments here today on behalf of your clients. This matter will be taken under advisement involving Mr. Shorman, and an order will be issued in due course.